**E-Filed 3/20/06**

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| JOHN E. BURRIS,<br><br>               Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART, Commissioner of Social Security,<br><br>              Defendant. | Case Number C 04-05059 JF<br><br>ORDER[1] DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER OF SOCIAL SECURITY FOR FURTHER PROCEEDINGS<br><br>[Docket Nos. 18 and 20] |

      Plaintiff John E. Burris ("Burris") commenced this action on November 30, 2004, seeking reversal of the determination by Defendant Commissioner of Social Security ("Commissioner") that Burris became disabled on September 7, 2002 rather than on October 16, 2001, as Burris had alleged. Burris moved for summary judgment or remand on June 27, 2005. Defendant filed a cross-motion for summary judgment on July 27, 2005. The matter was submitted without oral argument.

---

[1] This disposition is not designated for publication and may not be cited.

Case No. C 04-05059 JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER OF SOCIAL SECURITY FOR FURTHER PROCEEDINGS
(JFLC1)

## I. BACKGROUND

Born on December 16, 1952, Burris was educated through the eleventh grade. TR 64 and 79. He worked as a painter from 1980 through 2000, and then as a stockman in a warehouse from January 29, 2001 to October 17, 2001. TR 74. He has not been employed since that date. TR 13. On July 2, 2001, Burris was seen by Dr. Robert N. Pavy "for head shaking for the past 9 to 10 months." TR 155. Burris noted that he also had some shaking in his hands, "but not enough to bother him." TR 155. He testified that he stopped working in October because his tremor got worse and, while he was helping his brother move boxes, a box fell on the back of his neck. TR 38. On December 3, 2001, Dr. David Dorrance opined that Burris would be able to resume work on December 11, 2001, but one week later delayed this anticipated date to December 31, 2001. TR 180 and 175. On February 25, 2002, Dr. Dorrance noted that Burris complained of "neck pain - bad" and that there had been an increase in the tremors. TR 171.

On January 29, 2002, Burris was evaluated by Dr. Frank R. Wilson, a Clinical Professor of Neurology at the Comprehensive Movement Disorders Center at Stanford University Medical Center. TR 146-49. Burris told Dr. Wilson that tremors run in Burris's family. TR 146. Burris "consider[ed] the shaking of his hands to be inconsequential," noting that he could "hold and pour containers with beverages and use eating utensils without difficulty." *Id*. Dr. Wilson also noted that Burris had a "tonic deviation of his head to the left," which Burris said was caused when the box fell on him. *Id*. However, he "denie[d] neck pain." TR 148. Burris also had "a constant 4 to 6 Hz, side-to-side head/neck tremor," a "very slight postural tremor of both upper extremities," and "[w]riting and drawing tremor were documented." TR 148-49. *Id*.

In February, 2002, Burris began physical therapy "for the rehabilitation of shoulder pain," but discontinued the therapy as of April 11, 2002 because his neck tremors prevented him from performing the necessary treatments. TR 317. On March 12, 2002, Dr. Dorrance noted that Burris had pain in his neck and shoulders. TR 169. Also in March, 2002, Dr. Wagner noted that Burris's pain was "sort of controlled" with Vicodin. TR 315. On May 7, 2002, Dr. Wagner wrote both that Burris was "doing well" and that he had chronic pain in his head and shoulders.

2

Case No. C 04-05059 JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REMANDING TO THE
COMMISSIONER OF SOCIAL SECURITY FOR FURTHER PROCEEDINGS
(JFLC1)

TR 313. On September 7, 2002, Burris injured his knee when he fell while walking his dog. TR 311. On September 18, 2002, an x-ray showed that his knee was fractured. TR 224.

On September 13, 2002, Burris filed an application for disability benefits. TR 64. He alleged that he was disabled beginning on October 17, 2001, based on neck and shoulder pain, a weak right arm, tremors in his hands and head, his head going to the left side, and a right knee injury on September 6, 2002.[2] TR 73. On October 4, Dr. Wagner prepared a report for Burris's disability benefits application, in which he explained:

> [Burris's] diagnoses are Essential tremor of the head and neck, tonic neck deviation to the left, cervical and shoulder pain and weakness with limited range of motion and now the proximal fibular and tibular fracture.
> Based on these medical findings, I believe that it is not possible for Mr. Burris to handle, lift or carry objects. The essential tremor has not subsided with use of medications, so it is probable that these limitations (lifting, etc.) will be in effect for his lifetime. He can stand or sit for short periods of time.

TR 208-10.

Burris's application for disability benefits was denied on October 24, 2002, and again after reconsideration on January 31, 2003. TR 52 and 57. Burris requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 28, 2003. TR 13. The ALJ found that Burris was disabled, as defined by the Social Security Act, as of September 7, 2002. TR 19. However, for the period prior to September 7, 2002, the ALJ found that Burris's allegations of disability were "not generally credible," and concluded that he "retain[ed] the residual capacity to perform sedentary work." TR 18. On September 28, 2004, the Social Security Appeals Council denied Burris's request for review. TR 4.

## II. LEGAL STANDARD

**A.     Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision denying Plaintiff benefits. The Commissioner's decision (here the

---

[2] "Right knee injury. 9/6/02 Broken knee cap" was written in different handwriting on the form. TR 73.

3

Case No. C 04-05059 JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REMANDING TO THE
COMMISSIONER OF SOCIAL SECURITY FOR FURTHER PROCEEDINGS
(JFLC1)

1  decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is
2  based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523
3  (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). In this context, the
4  term "substantial evidence" means "more than a mere scintilla but less than a preponderance - it
5  is such relevant evidence that a reasonable mind might accept as adequate to support the
6  conclusion." *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1257. When determining whether
7  substantial evidence exists to support the ALJ's decision, the Court examines the administrative
8  record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at
9  1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support
10 more than one rational interpretation, the Court must defer to the decision of the ALJ. *Moncada*,
11 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

**B.   Standard for Establishing Disability Under the Social Security Act**

A person is "disabled" for purposes of receiving social security benefits if he or she is unable to engage in any substantial gainful activity due to a physical or mental impairment which is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. *Drouin*, 966 F.2d at 1257; *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984). The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden of proof is on the claimant as to steps one through four. *Id*. At step five, the burden shifts to the Commissioner. *Id*. If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, the Commissioner need not consider subsequent steps. *Id*. The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity? If so, the claimant is not disabled within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *Id*.

4

Case No. C 04-05059 JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REMANDING TO THE
COMMISSIONER OF SOCIAL SECURITY FOR FURTHER PROCEEDINGS
(JFLC1)

Step 2. Is the claimant's impairment severe? If not, then the claimant is not disabled and is not entitled to disability insurance benefits. If the claimant's impairment is severe, the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *Id*.

Step 3. Does the impairment meet or equal one of a list of specific impairments described in the regulations? If so, the claimant is disabled and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*.

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *Id*. at 1099.

Step 5. Is the claimant able to do any other work? If not, then the claimant is disabled and therefore entitled to disability insurance benefits. If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines. If the Commissioner meets this burden, the claimant is not disabled and therefore not entitled to disability insurance benefits. If the Commissioner cannot meet this burden, the claimant is disabled and therefore entitled to disability benefits. *Id*.

### III. DISCUSSION

Burris seeks review of the ALJ's decision that Burris became disabled on September 7, 2002 rather than on October 16, 2001, as Burris had alleged. The ALJ provided the following explanation for this decision:

> For the period prior to September 7, 2002 the undersigned finds that the claimant's subjective allegations [are] not generally credible. During this period

5

> the claimant's treating physician Dr. Dorrance is writing notes stating that the claimant can return to work as late as December of 2001. The claimant also stated as late as January 29, 2002, that his tremors did not bother him greatly. There are statements from his physicians that the claimant is doing well and that his pain is under control with treatment modalities as late as June of 2002. The claimant's treating physician Dr. Wagner, has stated his opinion that the claimant is disabled as of his injury on September 7, 2002—and has refused to change that opinion despite being given an opportunity to do so.

TR 17 (internal citations omitted). Burris argues that this decision by the ALJ was not supported by substantial evidence in the record. This Court agrees.

The ALJ mischaracterizes Dr. Wagner's statements with respect to the onset of Burris's disability. In neither of the documents cited by the ALJ does Dr. Wagner state that Burris was disabled as of September 7, 2002. On October 4, 2002, Dr. Wagner provided an overview of Burris's condition (portions of which are restated above), but stated no specific date upon which he believed Burris became disabled. TR 209-10. On October 12, 2003, Dr. Wagner noted that "the precise date [of onset] is unknown." TR 325. The ALJ did not expressly consider the fact that, on July 30, 2002, Dr. Wagner signed an "Attending Physician's Statement of Functional Capacity" indicating that "the patient was medically certified as unable to work" as of October 17, 2001. TR 152-53. The only medical opinion to which the ALJ cites for the proposition that Burris's disability began on September 7, 2002 is the mischaracterized opinion of Dr. Wagner. Accordingly, while the ALJ concluded that Burris's evidence of disability prior to September 7, 2002 was "not generally credible," it is unclear to what extent that conclusion resulted from the ALJ's view of Dr. Wagner's opinion. Further development of the record is necessary to resolve this uncertainty.

### IV. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that the parties' cross-motions for summary judgment are DENIED and the matter is REMANDED to the Social Security Administration for further proceedings.

6

Case No. C 04-05059 JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REMANDING TO THE
COMMISSIONER OF SOCIAL SECURITY FOR FURTHER PROCEEDINGS
(JFLC1)

DATED: March 20, 2006

_____
JEREMY FOGEL
United States District Judge

Case No. C 04-05059 JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REMANDING TO THE
COMMISSIONER OF SOCIAL SECURITY FOR FURTHER PROCEEDINGS
(JFLC1)

This Order has been served upon the following persons:

| | |
|---|---|
| Jacqueline Forslund | Jacqueline.A.Forslund@ssa.gov |
| Harvey Peter Sackett | hps@hpspc.com, lucyc@sackettlaw.com; julie@sackettlaw.com; kristina@sackettlaw.com |
| Sara Winslow | sara.winslow@usdoj.gov, kathy.terry@usdoj.gov; claire.muller@usdoj.gov |

8

Case No. C 04-05059 JF
ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT AND REMANDING TO THE
COMMISSIONER OF SOCIAL SECURITY FOR FURTHER PROCEEDINGS
(JFLC1)